Good morning, Your Honors, and please accord. My name is Ronald D. Ritchie. I'm here on behalf of the petitioner. I've reserved a few minutes for rebuttal. I'll forgo a resuscitation of the facts. I believe basically I have two primary arguments this morning. One is, first, we believe that the petitioner was generally credible, as correctly found by the first asylum officer and then subsequently by the first immigration judge. And the immigration judge made that determination only after several things. One, the judge had had the opportunity to consider the petitioner's demeanor and candor, and after confronting the petitioner regarding any perceived inconsistencies, and after having given the petitioner the opportunity to provide a reasonable explanation, and after considering the independent, objective, and reliable corroborative evidence, including probative Department of State country reports. Is there an issue here about whether you exhaust your administrative remedies here and should even be here? We believe not, Your Honor, because we raised, it was raised before the Board, second time going to the Board. What was raised before the Board? That the second immigration judge's adverse credibility determination was not supported by the evidence, by substantial evidence. That's throughout the brief. And there's also, in this case, since the Board, in its second opinion, or in its last opinion, did not, you know, it only issued a, it didn't really issue an opinion other than to say that it affirmed the immigration judge's decision below. So we really have to look at the immigration judge's decision as far as. Why is Massey not controlling? Well, for the reasons, Your Honor, that it was raised to the Board that the immigration judge, the second immigration judge, in his adverse credibility finding did not review all the evidence. The immigration judge did not consider independent, objective, corroborative evidence, did not even have an opportunity to observe the respond, the petitioner's demeanor and candor. He didn't have an opportunity to even query her about any perceived inconsistencies or give her the opportunity to provide that. That's, those are requirements. He didn't, in fact, to the contrary, in violation of her constitutional due process rights, both the second immigration judge and the Board questioned her credibility without considering all those vital, basic, required elements necessary to formulate a proper credibility finding. The Board and the immigration judge did not look at the totality of the circumstances. Part of the problem is we don't know what the Board considered, if it considered anything, because it doesn't tell us. There's no analysis from the Board. So your argument is that there was no, it was basically, there was not a hearing. There was a lack of hearing. Correct. There was lack of an opportunity to discuss any, to provide any opportunities to explain any perceived inconsistencies. That's what wasn't mentioned before the BIA, the Board, the Immigration Board, right? Yes, Your Honor. So that's what I was asking about the exhaustion of remedies. If you didn't mention it before the BIA, then why does Massey not say that you failed to exhaust the remedies? Because it is, it's maybe not spelled out in those words like, okay, the immigration judge did not permit the petitioner to testify or to explain any perceived inconsistencies. But it's discussed throughout the brief in the issues raised that there was not substantial evidence to support the adverse credibility finding. So we believe that they have exhausted the remedies. It went up to the Board. The Board knew what the issues were. They knew that one of the primary issues being raised was was adverse credibility finding by the second judge supported by substantial evidence. And they basically just affirmed the immigration judge without giving us any kind of analysis. You know, a significant side note that I wanted to point out is, and I hope that I'm not offending any Washington Redskins fans in my example, but in the present case, the Board was like the current Redskins team. They just punted the ball. It's that simple. The Board provided no analysis or meaningful review of the second immigration judge's adverse credibility finding. It's really important in this case. Haven't we said in Blanco that BIA's summary affirmance procedures don't violate due process? As long as they meet certain criteria. And what criteria did they fail to meet here? Well, it's kind of hard to say because we don't, there's no analysis, so we don't know what the Board member considered in issuing the single issue about the adverse credibility finding by the second judge, which was contrary to the initial judge's finding and the asylum officer's finding. And so there is already, that was created a dispute, if you will, between different judges and the asylum officer. Because the petitioner keeps saying different things to different people. Keeping in mind that the second decision of the immigration judge was made in 2017. The initial one was in 2011. So things changed. Things happened during those six years, especially in Cameroon, the country of the petitioner. A lot's been happening in the last few years. But whether she was arrested or not while she was in Cameroon didn't change. She either was or wasn't. And initially, she didn't say she'd been arrested and detained. And then later on she said, I was arrested and detained without trial four to five times. Correct, Your Honor. And we would argue or explain that the reason for that is one thing, she was in detention for six or seven months leading up to the time of her hearing. She had from Cameroon. She had been through a lot. She was isolated. She had no family. She had really no support. Her mental state was not what it was six years later when she had been out, been free, been able to reflect on things and have that time to hopefully stabilize emotionally. And that's what was raised before the immigration judge, the second one. Before you leave off the exhaustion of administrative remedies, I just wanted to be clear. You're saying this case is more like the Ramirez case and not the Massa case, which is why you're saying you, I know you say you said it. Let's assume it's not said directly that you asked for a hearing. And would you then find support in Ramirez? And if so, I'd like to know how. And I have to apologize, Your Honor, but I'm at the top of my head. I will not be able to address that. But I would note, though, that it's important to keep in mind that the immigration judge, the second one, had an obligation. Once he determined in his mind that there were to discuss those, to respond to those, so that he could determine whether she had a reasonable explanation, a plausible explanation. And that's true. But our review arises from the BIA. And the fact that he didn't provide that opportunity would normally be something you would then make an issue before the BIA. But you didn't. So the question then becomes is, does it fall under Massey? Because Massey said if you didn't bring it before the BIA, you're out of here. Right. I understand that. But we believe that this can be distinguished from Massey, Your Honor. Then maybe you better read Ramirez and tell me if it helps you in it. Yes, Your Honor. I will try to do that during my time sitting back. The board declined to address immigration's determination. As I noted, the petitioner is not credible. And this honorable court has held that petitioner's testimony is credible if the board doesn't make a determination in Li Feng Lin versus Mukasey. Moreover, where the board rejects the testimony of a witness, this court has held that the board has to offer specific cogent reasons for its disbelief, Kamara versus Ashcraft, which it did not do. In this present case, the board neither addressed the second immigration judge's adverse credibility finding nor did it offer any specific cogent reasons for its disbelief. This court must find that the petitioner is credible and reverse or at least remand for the reasons stated above. I think my time is up. I need to sit and say for rebuttal. Thank you. Thank you. Citizen. Good morning. May it please the court. Petitioner's arguments in this case are either foreclosed, uh, those having to do with, uh, the affirmance without opinion or they're unexhausted. All of those having to do with whether or not she received a hearing or whether or not the case, uh, the, the adverse credibility determination is faulty because she didn't receive a hearing, um, or wait. Um, and that would also be with regard to the lack of hearing because she was given an opportunity that the immigration judge said, do you want to have a new hearing after the remand from the board? Do you want to have a new hearing? Or, you know, do I decide this up the record? Petitioner's counsel comes in and says, I'll provide you, uh, um, and I'll say exactly what, but he offers an affidavit. The immigration judge indicates that he will then, you know, that, that that's the way things will proceed. And then there's a question, you know, will you issue a written written decision? And the immigration judge says, yes. And there's no objection to that. So it's waived. Um, he does raise an adverse credibility concern in his appeal to the board, but that adverse credibility, uh, guess what? Um, his adverse credibility argument is, doesn't go to the specific findings of the immigration judge, more or less, right? Uh, it doesn't address whether or not, um, you know, address the NCNC as opposed to the SCNC or the, um, National Council of Nigerian Cameroons or as opposed to the Southern Cameroonian National Council. Um, or the, the continually changing stories about what happened to the petitioner's phone, whether she disconnected it or lost it or, um, changed out the SIM card or disconnected it and then got another person's phone and then lost that. Um, there's no attempt to, uh, what, uh, to, to make these consistent. There's no attempt to address the, um, argument with regard to the immigration judge's findings. So in the first instance, you're relying upon, uh, I take it Massey for the proposition that the remedies were not exhausted. That is correct, Your Honor. And, and Ramirez would not have any impact on this case? I don't think so. In fact, I think this court has specifically said in the impermanence without opinion context, the failure to raise it, to raise the issue in the brief to the board means that this court doesn't have, uh, doesn't have jurisdiction over it. And there's a specific site. Um, I discuss it in the brief, but I don't particularly, I think I use, um, starts with an E. I can't remember the name of the case off the top of my head. There's a better case that goes specifically to this point, um, which is a SICA, which is 362 F 3rd, uh, 264, if you want to look with impermanence without opinion, you have to, you, you do have to clearly raise this to the board or else, you know, it's, it's gone. Um, so for those various reasons, I mean, going back to the adverse credibility findings of the immigration judge, very quickly, um, there's the inconsistency with regard to whether or not her father and her family were involved with, were involved, uh, in the SC and C. Um, in her testimony, she says they, they don't have any, you know, they don't know anything about it. Uh, they aren't involved. Uh, we have, uh, an affidavit from her attorney who says the family has been long, has a longstanding involvement as well as the, uh, I guess, um, the, the chairman, uh, to do, uh, who says that, you know, the father does have involved, you know, has been involved. Um, as well as finally the, uh, you know, the indication with regard to the date in which the meeting was broken up, in her earlier testimony, it seems to be October. Um, and later she says September. Uh, the only claim that she does make with regard to a specific adverse credibility finding has to do with her new statement that she was detained multiple times, uh, that she never raised in her initial hearing. Um, and her response to that is, well, she had, she had PTSD because of this, but there's no evidence given, uh, you know, she gives no evidence in her affidavit or elsewhere with regard to PTSD or it affecting her ability to remember her, uh, you know, what happened to her in the past as far as I'm aware. Um, if the court has no further questions, the government has. Thank you. Let's just be very short here. Um, so I have not had the opportunity, Judge Wynn, to, uh, definitely do that. Counselor, you do a lot of these cases, immigration cases? I do, yeah. You do. All right. Go ahead. Um, I would just respond to... I think it's a fairly significant opinion because if you look nakedly at the massive case, you didn't raise that issue to the BIA. You followed it straight down the line. You out of here. The only possible grace I can see that might come from remerits, which, you know, look to see, I guess, to the extent, was it essentially brought up? In other words, could you glean from what was given the totality of the circumstances here? Was it, was it brought up? And that would impact if, if in fact you can bring that, then the question of not getting a hearing comes up because you've got to look at the totality of adverse credibility finding. Uh, so those are connected issues there. Thank you. Um, and, and I, you know, based on that, I would argue that throughout, um, the petitioner's brief to the board, it does address, um, without specific, you know, using certain language, but them, um, definitely showing that, that the petitioner, uh, believes that the adverse credibility finding by the immigration judge was improper, um, for multiple reasons. And it's discussed throughout several issues within that brief. Um, we believe also that, that the petitioner never waived her right, uh, even though, um, we explained to the immigration judge that we would be willing because the judge, the judge basically wanted to just issue a decision. And he said, let the lower courts, presuming that the higher courts, uh, mesh all this out. Um, and so we suggested maybe we, we submit an affidavit from the respondent, um, which we did along with a lot of significant independent corroborative evidence, demonstrating that her testimony and her account, uh, was credible, um, and especially in light of country conditions in Cameroon. Um, and she didn't, and I don't think it would be appropriate, um, or fair to say that she waived her right to explain any perceived inconsistencies that had not been brought to her attention as of, um, that, that last hearing before the immigration judge. Immigration judge had not yet received her affidavit. He had not yet received this significant substantial, um, country reports and other independent corroborative evidence. Once the judge had received that documentation, that evidence, conceivably the judge reviewed all of it, um, and the judge should have given at that point, if the judge, if it raised any inconsistencies or perceived inconsistencies in the judge's mind, he should have scheduled a hearing, brought the, brought the petitioner in before him and said, I have these concerns, I have these perceived inconsistencies, address them. And if, and if, and then gone from there. But the judge never allowed that. He just issued the decision, sent it up to the board, and that was, that was it. Um, so we, we believe that, um, that that was not fair, as fundamentally unfair, how she was, uh, treated in this, um, situation. Unless there's further questions, I will sit down. Thank you. Thank you, counsel. Thank you. All right.
judges: Roger L. Gregory, James A. Wynn Jr., Stephanie D. Thacker